The last case this morning is Iridescent Networks v. RPX Corp. v. Erickson, 2019, 1386, 87, and 89. Mr. Hullohan. Thank you, Judge Lurie. May it please the Court. Your Honor, the Board's decision below rests on three fundamental legal errors. In the first instance, the Board completely erased the requirements for finding that a document is a printed publication under Section 102A. The Board read the word dynamically out of the claims of the iridescent patents, and the Board allowed the petitioners below to completely rewrite a prior art reference in order to find limitations in the reference that simply does not exist. Can I just make a question of clarification? Your second two points are exclusively related to Golden, right? Yes, Your Honor. Okay, so if we do not agree with you on the Cubone publication, that ends the case and we don't reach those points, correct? I believe so, Your Honor. The Cubone reference was asserted against both of the iridescent patents. The Golden was only asserted against 119. So I'd like to address Cubone at the outset. All we know about Cubone is that one person found it, Mr. Foti. The story that Mr. Foti told in his very thin declaration falls far short of meeting this Court's requirements for demonstrating that a document is a printed publication. There's no explanation for why Mr. Foti was looking at the IETF materials in the first place. There's no explanation as to how he found RFC 2768. If you look at his declaration, he says that if you search for Cubone, you'll find RFC 2768. But the story is that he found Cubone by looking in RFC 2768. It's completely circular, and we have no idea where this Cubone reference came from. And we have no basis to conclude, as the Board did, that anybody but Mr. Foti ever looked at it or would have had interest in it as a member of the interested public in the relevant technology. But there's nothing wrong with Mr. Foti. I mean, it's a question of evidence and credibility. The word one in patent law has significance. One public use can negate validity. One publication. And so, Mr. Foti, if he found it and his evidence was believable, why isn't that sufficient? Your Honor, if you look at the case law decided by this Court on this issue, there is always a critical mass of the interested public that the record evidence shows either had actual access or would have found it through the exercise of reasonable diligence. It also goes to the corroboration requirements. This Court holds consistently that if you want to validate a patent based on one person's testimony, you need corroboration, either from other individuals or from documents. But this is more than just testimony. This is a document. Corroborating testimony that a document is a printed publication with the document itself completely erases the requirement to demonstrate, to satisfy this Court's rules as to what a printed publication is. There's no dispute that he found it. But in every case where there is a disputed alleged printed publication, somebody found it. So the mere fact that Mr. Foti found it is simply not enough. There needs to be more in the record. It could be idiosyncratic on his part. Maybe nobody in the industry looks at IEFT. Did I say that right? IETF. IETF. I didn't think I said it right. Maybe nobody in the industry looks at IETF. Maybe nobody in the industry looks at Internet, too. Maybe they are completely unrelated, obscure, individual, personal websites, but maybe Mr. Foti had some personal knowledge that a skilled artisan wouldn't. Is that kind of your idea? Is that what is motivating your argument that Foti alone isn't enough? Yes, Your Honor. And if you look at the Blue Calypso case, that's exactly what this Court decided. In Blue Calypso, there was a document that was posted on a grad student's individual webpage. It was on the World Wide Web. It was technically publicly accessible to anybody who tried hard enough to find it. But this Court held that because there was no evidence of actual access by the interested public and there was no coherent story as to how a member of the interested public would have stumbled upon this grad student's personal webpage to find this article, that did not satisfy the strictures of 102A. Well, perhaps we agree with you. So tell us about Golden. Can I ask one question first? That's okay. What about the other evidence that's being relied on here, like the Internet active snapshot or the copy of RFC 2768, which references the Cubone project? You say you need to have some corroborating evidence, but there is some material here, at least, that has been submitted. Whether you think it's corroborating or not, the Board didn't just rely on Mr. Foti's testimony and nothing else. Respectfully, Judge Stoll, I think that the corroboration – so there are two issues. There's the corroboration of what Mr. Foti said. Now, the documents that Mr. Foti attached to his declaration corroborate that he himself found the documents. There's really nothing else you can infer. So is it your point that the problem is that there is no testimony that a person of ordinary skill in the art would have done what Mr. Foti did? Exactly. And that is required consistently under this Court's precedence. The language that this Court has used is that there must be a roadmap from point A to point B. What if there's evidence that a person of ordinary skill in the art would have known of Internet 2? Or that there's evidence that one person of ordinary skill in the art would have known of the IETF website? Would that go further than what we have here? No, Your Honor, that's not good enough because you need a roadmap to find the Cubone reference. And this is not an indexing case. The Board did not rely on Cubone being indexed or clearly searchable within Internet 2. Isn't there a patent application that had been published two years before the priority date which referenced Cubone? Yes, Your Honor, by Mr. Foti himself. So he's not exactly a disinterested party. No, but why doesn't that application on its face supply what Foti's testimony maybe does not? I mean, patent applications that discuss particular publications like this Cubone publication, why isn't that sufficient to find the Cubone publication publicly accessible? The patent application referenced the Cubone work. It did not point directly to the Cubone reference. And the Board correctly held, distinguishing the Bruckemeyer case, that the mention of Cubone in a patent application did not amount to Cubone becoming a printed publication because there's no evidence in the record still to this day, as far as I know, that the Cubone document itself was ever publicly available in the PTO files. Why can't it be corroborating evidence, though? I mean, the corroborating evidence doesn't have to perfectly align with the primary evidence, right? I mean, there's some rule of reason that applies when you're looking at corroboration, right? Certainly, Your Honor. Again, it's corroboration that Mr. Foti knew about Cubone and his co-inventors on the Cerdillo patent knew about Cubone. That's not enough to show that the interest of the public would have been led to Cubone through the reasonable exercise of diligence. This is a factual question we review for substantial evidence, right? The public accessibility issue. Whether a document is a printed publication is a question of law based on underlying facts. But I'm asking if the public accessibility is an underlying fact or not. I believe so, Your Honor. It's covered in the briefs. I apologize. I don't have that on top of my head. But I think there are numerous cases from this court, the Blue Calypso case, the voter verified case, and probably the MIT case being the most salient, that lay out the facts that are available to a lower tribunal, as recorded in the PTAB, in making this assessment. And in every case, there was a critical mass of the interest of public, either who had actual access or had reason following some roadmap, again, in the factual record that would point them to the disputed reference. Your view is that the roadmap provided by Mr. Foti isn't good enough because he's not speaking to a person of early use on the art. He's only speaking as to himself. Is that right? He's only speaking to his own personal experiences. He may be a person of early use. In Paragraph 4, he says he talks about persons of ordinary skill in the art and has a parenthetical that says including myself. He defines himself as a poser. I don't deny that Mr. Foti himself is a person of ordinary skill in the art, but we're not talking about one person. We're talking about the interest of the public. And individual members of the interest of the public can stumble upon things idiosyncratically, as Judge Moore said, and that would not, as in the Blue Calypso case, that would not satisfy 102A. But he actually says one technology that was well-known and publicly discussed by persons of ordinary skill in the art, including me in this timeframe, was the Cubone bandwidth broker architecture. So if he's saying the Cubone architecture was well-known and discussed by people of skill in the art, and then you can search and find this Cubone printed publication, why isn't that enough? There's no corroboration for a statement that Cubone was well-known and discussed among the general public or the interested public. There's no corroboration whatsoever for that sentence. What about the printed publication, which again, this is his own printed publication. I guess printed application, but it's printed. It's an application. And it mentions Cubone, not the article, but it mentions Cubone, and the work. That shows that he and his co-inventors on that patent knew about Cubone. No, but it was published two years before the critical date. So why doesn't it show that anyone interested would have known about Cubone? Because his patent, that Cerdillo application, is right in the same wheelhouse as this technology. It's certainly very highly relevant. So a skilled artisan that was thinking about this technology would have found that patent. And when they did, they would have seen Cubone. Your Honor, even if we can believe Mr. Foti's conclusory statement that people knew about Cubone, there's still the Cubone article itself, and there's no road map to how a person would have actually found that. And we're talking about a printed publication, a document, and we need a road map from point A to point B. People could have generally gone, oh, well, there's this thing called Cubone out there, and they're doing something in this area. And they may have even known about Internet 2. But there's no evidence in the record that a person of ordinary skill in the art would have known to search Internet 2 to find Cubone. Can I ask you, what additional things would Mr. Foti, can you give me hypothetically, because I'm just having a hard time understanding what you think, what additional things needed to be in Mr. Foti's declaration or in the record in order to satisfy the test? Certainly, Your Honor. And I don't need to rely on hypotheticals. I can rely on this Court's precedents. In Voter Verified, the documented issue was actually disseminated by a subscription service to the interested public. In, I believe it was the MIT case, there was a conference. There was a poster at a conference. Fifty to five hundred people were at that conference. So there was people. So there needed to be evidence that people actually looked at Mr. Foti's printed patent application. If there were evidence that a critical mass of the interested public had looked at the patent application and knew that the Cubone technology he was talking about had a specific article attached to it and that those interested members of the public knew how to find that article, that would get us closer to where we are now. As of now, all we have are very vague and conclusory assumptions. And I know I'm into my rebuttal time. I know Judge Lurie might want to talk about it a little bit, but perhaps I could reserve that time for some golden discussion at the end. Well, if your opposing counsel addresses it, then you will be able to rebut it. Okay. Mr. Lowe's. Andrew Lowe's on behalf of Applebee's, RPX, and Erickson with me at council table. Mr. Adam Fowles. May it please the Court. I'd first like to address a couple of statements that were made by opposing counsel. He said there's no evidence that Cubone is available in the PTO files. I can assure you that, in fact, that is the very Cubone reference that is at issue in this case. At APPX 3837 to 3866, we obtained it directly from the patent office. And that's what we've utilized in this case. It's the Cubone reference that Mr. Potey obtained in 2000, as he testified in his declaration. He then utilized that in preparing his patent application as sort of the base and added on to it additional disclosure, describes that in his patent application. And then as he submitted his patent application, it was incorporated by reference into the patent application. He submitted it with the filing in December of 2000. So when you say that the Cubone reference was at the PTO, you're talking it's within the file history of a particular patent application? Absolutely, yes, Your Honor. Okay, but it's not like you're saying that it's somehow indexed somewhere in the PTO. That's correct. To the extent it's indexed, it's indexed as a part of the patent office's indexing of the Cerdillo patent application, which Mr. Potey is also a co-inventor on. But that is the actual Cubone that's at issue here. So I just wanted that to be clear. We understand that. The question is whether that's enough, right? I mean... Right, and I think really there are three distinct instances that they're related, but each of those could form a basis for public accessibility. The first is Mr. Potey by himself having a copy. Similar to Noble BioCare, you had a salesman that went to a trade show, picked up a copy of that reference. It was corroborated because he gave it to his colleague who put it in a file. Here we have Mr. Potey going to a publicly available website, downloading a copy, printing it for himself. It is a little different, though, because in the circumstance that you were just talking about, there were presumably multiple copies available for anybody to take, and the person took one, and then the copy was corroborated. Here, on the other hand, the concern that I hear being expressed by your opposing counsel is that Mr. Potey himself may have been the only person in the world to find this. How does Mr. Potey's finding of this reference show that it was publicly accessible and not just something that he found on his own? Sure, Your Honor. I think that's into the second prong, which is this voter-verified kind of it's placed on a website. How does somebody know about this website? So I think that goes into the second prong as well. And here there's evidence Mr. Potey testified that the Internet 2 website was known through the IETF materials. Where's that? It's Exhibit 1035, where in the IETF materials that they referenced. Oh, no, that it was known. You said that he testified that Internet 2 was known. I didn't see that, that where there was testimony that opposed it would look to Internet 2. I believe, let's see. I believe it was directed to the Internet 2 organization. I believe it's maybe not directly in his testimony, but it's through the IETF document that referenced the Internet 2 website, which is attached or referenced in his declaration. Tell us why Golden renders the claims obvious. Golden, as set forth in the decision as well as in our briefing, Golden provides on-demand bandwidth allocation through a desired route, which is exactly what the claims are about. You know, instead of having a dedicated line that's only used for one set of parties, it now allows that bandwidth to be switched between parties depending on who wants it. In response to requests, Golden provisions that line with the amount of bandwidth, and it may be done with a predefined path. The board was correct in reaching their decision concerning the construction of dynamically provisioned and found that, you know, it did not exclude the use of predefined paths. So I think, you know, on that basis, it has that. An additional aspect, in addition to the voter verified type situation, we have that the website itself was known. And there's further evidence. We also have the Patent Office's actions in publishing, making available. You say the website itself was known. I don't know what website you're talking about. The Internet2 website. What is the evidence that a skilled artisan would look at the Internet2 website to search it, to find things relevant to this technology? Mr. Foti's testimony concerning looking at the IETF documentation and its reference to the bandwidth brokers and the Cubone architecture and referencing that that working group is part of the Internet2 organization. So here's the problem. I mean, for all I know, IETF is just as obscure as Internet2 is. I mean, I don't know that either of them are obscure, and I'm not attempting to pass judgment. I'm trying to say his argument is all Foti's testimony tells you is what one idiosyncratic individual did. His testimony doesn't tell you what a POSA would do and that that's how it's deficient. So how – I'm not understanding your argument. So Mr. Foti's testimony is one aspect. There are also additional documents concerning the Internet2 organization. They were actually submitted by Iridescent in their Patent Owner Preliminary Response Exhibits 2003 and 2004. And those documents demonstrate that Internet2 was a website that people of skilled in the art would go to? The Internet2 was a well-known organization working on the Cubone architecture, basically demonstrating how well-known it was. Mr. Foti testified that Internet2 housed articles relevant to that kind of research. So the Internet2 organization was known, demonstrated by these articles corroborating Mr. Foti's testimony. Can you tell me where in the appendix I would find those? That the Internet2 was a well-known organization for information related to this technology? Certainly the Foti Declaration as well as APPX 4223 to 4226. That's just the Foti Declaration? That's the Foti Declaration, yes. Where does it say that the Internet2 organization was well-known in this technology? Have your associate can help you in the remaining seven minutes. Yes, Your Honor. It's at Exhibit APPX 4451. Information supplied by Iridescent concerning the Internet2 QOS working group as well as APPX 4452 to 4453, Exhibit 204. Okay, well I'm on Exhibit 4451 and this just seems to be a printout from Internet2's website. That doesn't actually say what you said, which is that Internet2 was a well-known organization on this technology that people of skill and the art would look to. So this is just literally a printout from Internet2's website. How does this, I don't understand how that supports the idea that it is a website people of skill and the art would turn to. It supports that it was out there, that that's what its goal was, its mission was. But everything is out there. Every public accessibility case is something that's out there. The question is, is it publicly accessible? Would a skilled artisan find it if you were looking for it? You don't have to necessarily know it exists, right, when you're looking for it. Would a skilled artisan find this? Right, in terms of what are the roadmaps to help a skilled artisan find it, we have obviously Mr. Foti's patent application, which directly referenced the Internet2 working group as well as provided URL. We also have this additional totality of circumstances, evidence that Internet2 existed as an organization. It was relevant to research in this space. There was references to it in other research organizations, the IETF, which at the back of that document lists a lot of recipients that are part of that organization. And so based on the totality of circumstances, this is what people of skill and the art were doing. They were looking at this kind of information. That's what Mr. Foti testified to. That's what brought him to looking at IETF documents and ultimately to the Internet2 website with Cubone, describing the Cubone architecture. If I may switch to the actions by the Patent Office that I think also demonstrate public accessibility. Consistent with this court's decision in Brucklemeyer, the Sardella patent application was published by the Patent Office. It had a discussion of Cubone. It directed the reader to that. It was also incorporated by reference. In Brucklemeyer, it was a Canadian patent application published, but it had left out figures three and four related to heating the ground. And the court determined that there was some discussion of heating the ground in the printed document, which would lead a person of skill and the art back to the Canadian Patent Office to look at those records. I submit that this case is very similar. There's information that is described as being present, but it's expressly recognized as it's not present. It's incorporated by referencing another document. It would lead that reader back to a resource. Now, one would be the URL site for Internet2, but a person of skill and the art is not a robot. If it's not there, they would also know, let's look in the Patent Office. It's the repository for information. So I submit that this case also fits within the court's Brucklemeyer decision. It's consistent with the Weir decision, the Australian. Didn't the board actually hold that the URL in the patent application, it no longer works? They weren't able to verify whether the document was or was not, in fact, publicly available at the time. There is evidence that it no longer works. They ultimately decided that inclusion in the Patent Office records and laying those open was insufficient. Under Brucklemeyer. But that, I think, is something that this court should consider. It's not necessary. They can certainly affirm the board based on the evidence that is up record concerning all the different aspects. And is this whole case affirmable under Golden as well? Does Golden affirm everything? I know Cubone affirms everything. Does Golden affirm everything? It does not. Golden was only asserted against one of the patents. Cubone was asserted against both. So we have to decide Cubone even if we agreed with you on Golden. Correct, Your Honor. Yes. Are there any further questions? I think a lay witness. So I always get confused by this. The PTO doesn't necessarily follow the rules of federal rules of evidence, right? In the PTAP proceedings? Yeah. They're the general guidelines, but there are definitely variances. And the reason I ask is, do you think a lay witness could offer the testimony? So the smoking gun in a case like this is an expert witness who says, one of skill in the art at that time would have found this reference. Here is the websites they would have gone to that are relevant. You know, that's the smoking gun. And what you haven't said is this lay witness that says, this is what I did. He actually says in one paragraph that he thinks a skilled artisan would have done something. But I actually, under the federal rules of evidence, 701 and 702, I don't think a lay witness could actually offer such testimony about what a skilled artisan would have done. So I guess I'm kind of questioning whether or not you agree with that. I mean, certainly we have cases that say only experts, not lay witnesses, can offer testimony on things like obviousness or stuff like that. So what are your thoughts on whether or not Mr. Foti could have taken you across the finish line? Maybe cumulatively everything takes you across the finish line, but could Mr. Foti have done it all for you? First, yes. I think the Noble Vial Care case is a prime example where it's not an expert talking. It's people that actually did it. It's actual dissemination of a single copy of a reference. But as to your point about could he? But that's because those are the people that disseminated the reference. Mr. Foti's testimony is not that he disseminated the reference. He sort of takes you through the labyrinth of how he found the reference. And the question is, is that a same path that another skilled artisan would have necessarily taken? And I certainly will answer your question. But first, in Noble Vial Care, the primary witness was actually the one who found it. It was disseminated by a company, and he's the one that found it. He is a person of ordinary skill in the art, so he can testify about what others would know. I don't think you need to be an expert to talk about what others in your field would know or do, because that's his experience. He's experienced in searching and locating this information. That's in his declaration, that that's why he was doing this. I kind of feel like that goes. Do you remember what 701 and 702 say? If you're going to offer scientific and technical knowledge in general, that you have to be an expert to do it if that's why you're offering it to assist the trier. But I think lay witnesses are only allowed to testify about their own firsthand knowledge and information. I think the rules of evidence exist to protect parties from being disadvantaged by having non-experts offer expert testimony. Certainly, but his testimony is corroborated. He did, in fact, have it. He found it. It was located on that website. The URL is on the exhibit, the date that it was printed, June 2000. It all corroborates his testimony. Do you know of any cases where a court is held, our court is held, that a fact witness can talk about the knowledge of a POSA in any context? You know, whether it's 103 or anything else. I mean, a fact witness being a POSA, a person who actually qualifies, but they're just a fact witness, can they talk about what a POSA would know? So can they serve in both roles of being a fact witness? Yeah, I'm just thinking, yeah, outside of the context, any context. You know, patent law often, in patent law, we're looking at, what does a person of ordinary skill in the art know, in many different contexts of legal issues we look at. So I'm asking you if you're perhaps aware of any cases where we've said that a fact witness can talk about what a POSA would know, a person of ordinary skill in the art would know. Yes, Your Honor, at this point, no, I don't know of any of those cases. I see the amount of time. Thank you, counsel. Thank you. Let's hear from Mr. Holohan. This is rebuttal time. Your Honor, I apologize for me speaking earlier about the presence of Cubone in the file history. What I was saying, my understanding based on the record, and my understanding of the record, is that it was never publicly available in the file history. It may have been lodged with the Patent Office, but as the Board correctly held in rejecting the first grounds for finding it a 102A reference, it's the incorporation by reference and the reference to it in the patent application was not satisfactory to render it a print publication. With that, the Board's decision as to the file history piece, the first argument we believe is correct, unless Your Honors have any questions on that. I'm happy to talk about Golden in the time that I have left. The Golden reference, the fundamental issue is that the Board found credible this idea that you could upgrade the terminating endpoint into a host, which Golden does say you can do. And you can further infer from that that there would then be a communication path from the new upgraded host to the controller. What would happen if you did that is that the upgraded host would tell the controller would communicate with the subcontrollers, pick a predetermined, not dynamically provisioned, but predetermined channel, and then authorize the upgraded host to communicate via that channel to the terminating endpoint. There is simply no arrow between the controller and the terminating endpoint for the upgraded host. And Cubone would simply never do that because Cubone doesn't need to do that because all of its channels are pre-calculated. The iridescent patents require that communication from the controller to the terminating endpoint because the controller needs to calculate all of the parameters of the network in order to calculate and construct on the fly the channel. You just said Cubone when you were talking about the prior. I'm sorry. Did you mean Golden? I meant Golden. I just got confused. I meant Golden. Okay, thank you. I appreciate the clarification. I can tell what we're all thinking about today. In the iridescent patents, the host, the originating endpoint, communicates to the controller. The controller must communicate with the terminating endpoint so that it can then construct the channel on the fly, dynamically provision the path, and then at that point, the originating endpoint and the terminating endpoint communicate via that path. In Golden, that never happens. There's one communication host to controller. The controller communicates with the subcontrollers, picks a path, and then the communication goes from the host to the terminating endpoint. And this relies on your claim construction argument, right? It does not, Your Honor, because the missing arrow from the controller to the terminating endpoint is simply not there, regardless of how you construe the claims. The claims explicitly require a path from the controller to the terminating endpoint, and that is simply not there and in no way suggested by Golden. Whether your argument is golden or iridescent, we understand it. We'll take the case under advisement. Thank you, Your Honor. All rise. The Honorable Court is adjourned until tomorrow morning. It's at o'clock a.m.